ANONYMOUS *v.* WARDEN (1980–4)*

SUPERIOR COURT

* Thus entitled, in view of General Statutes § 54-142a.

BIELUCH, J.  The plaintiff seeks his release from imprisonment by a writ of habeas corpus alleging that his pleas of nolo contendere were not voluntarily or intelligently made and were accepted by the court in violation of the fourteenth amendment to the United States constitution.[1]

The plaintiff was charged with the following crimes: (1) burglary in the first degree; (2) sexual assault in the first degree; (3) robbery in the first degree; and (4) unlawful restraint in the first degree.  Additionally, he was charged with being a persistent dangerous felony offender.  The third charge was dismissed. At a hearing subsequent to that dismissal, the plaintiff withdrew his pleas of not guilty and was allowed to plead nolo contendere to the three remaining charges.  After finding those pleas to be voluntary, the court accepted them and entered findings of guilty.  In view of these pleas and findings of guilty, the state did not proceed with the persistent dangerous felony offender information.  Thereafter the plaintiff was sentenced to the maximum term on each count to be served consecutively for an effective sentence of not less than twenty-two and one-half years, nor more than forty-five years.  No appeal was taken by the plaintiff from his conviction.

---

[1] A further ground, that his sentence was imposed in violation of General Statutes § 53a-37, was withdrawn after the Supreme Court's decision in *Green* v. *Warden,* 178 Conn. 634.

The plaintiff now seeks his release by writ of habeas corpus, claiming that his pleas were not voluntarily or intelligently made for these reasons: (1) the court failed to establish (a) that a factual basis existed for accepting the pleas, and (b) that the plaintiff understood the elements of the several charges and that his conduct fell within their scope; and (2) the plaintiff was not adequately informed that by his pleas he was relinquishing his right to the presumption of innocence, his right to confrontation, his right to compulsory process and his right to remain silent. These are claims which properly could have been raised on a direct appeal from the judgment of conviction. Had an appeal been taken and any of the claims found to be valid, the case could have been remanded to the trial court for a new trial. See *Blue* v. *Robinson,* 173 Conn. 360, 369.

The court finds that the plaintiff has overcome the legal hurdle created by his failure to appeal inasmuch as he did not deliberately bypass the orderly procedure of a direct appeal. See *Blue* v. *Robinson,* supra, 369–70. He alleges that he did not knowingly or understandingly forgo the privilege of seeking to vindicate the claims made in his petition for a writ of habeas corpus by a direct appeal and "[m]oreover, [he] was not informed by his court-appointed attorney, or anyone else, of his right to appeal his conviction . . . ." The record of the sentencing hearing supports the latter. Although the plaintiff was then notified in writing by the court clerk of his right to a review of the sentence, he was not advised of his right to appeal the judgment. See Practice Book, 1978, §§ 945, 1021 (11); *Blue* v. *Robinson,* supra, 366. This court, therefore, may consider the merits of his petition for a writ of habeas corpus.

It is well established that a court should not accept a guilty plea which was not voluntarily and

intelligently entered. The record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily. *Boykin* v. *Alabama,* 395 U.S. 238, 242. "While the *Boykin* case did not specify what the record must 'show,' it did observe (p. 243) that it could not presume 'from a silent record' a waiver of the federal constitutional rights involved and, therefore, the record should disclose 'an affirmative showing' that the guilty plea was intelligent and voluntary. In *McCarthy* v. *United States,* 394 U.S. 459, 464–65, . . . in construing rule 11 of the federal rules of criminal procedure, the Supreme Court had indicated that where the federal rule applied the court should in addition to inquiring into the defendant's understanding of the nature of the charge and the consequences of his plea satisfy itself that there was a factual basis for the plea. It was in response to the holding in the *Boykin* case and to assure a sufficient record that new rules of criminal procedure were adopted by the Superior Court in 1976 . . . ." *Blue* v. *Robinson,* supra, 373. These rules; Practice Book, 1978, §§ 711–713; "now require that the judicial authority not accept a plea of guilty without first personally addressing the defendant and determining that he fully understands the constitutional rights which are waived by a plea of guilty [or nolo contendere] and that there is a factual basis for the plea." *State* v. *Williams,* 173 Conn. 545, 554–55.

"The judicial authority shall not accept the plea [of guilty or nolo contendere] without first addressing the defendant personally and determining that he fully understands: (1) The nature of the charge to which the plea is offered; . . . and (5) The fact that he has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he has the right to be tried by a jury

or a judge and that at that trial he has the right
to the assistance of counsel, the right to confront
and cross-examine witnesses against him, and the
right not to be compelled to incriminate himself."
Practice Book, 1978, § 711. The court must further
determine that the plea is voluntary. Practice Book,
1978, § 712. Finally, the judge "shall not accept a
plea of guilty [or nolo contendere] unless he is
satisfied that there is a factual basis for the plea."
Practice Book, 1978, § 713.

The record taken at the time the plaintiff entered
his pleas of nolo contendere has been reviewed by
this court. Before accepting the pleas, the court
was given the background of the charges. The pro-
secutor related that early one morning the police
were dispatched to the complainant's home where
they found her in a semi-nude state of dress and in
a battered bloody condition. There was physical
evidence of a struggle. The victim indicated to the
police that the plaintiff, her former son-in-law, had
broken into her home and had physically and sex-
ually assaulted her. Hospital examination revealed
various fractures and lacerations in the head and
facial areas. Live sperm were found in her vagina
and there were lacerations in the vaginal and genital
areas.

In a written statement the victim related that at
about 3 a.m. that morning the defendant had con-
fronted her unexpectedly and at knifepoint raped
her and violated her person with his fist. She was
also bound, struck, beaten and robbed of $80.
Eleven days later the plaintiff was apprehended.
He admitted entering the victim's residence and
physically assaulting her. He denied, however, the
sexual assault and battery. Upon inquiry by the
court, the plaintiff acknowledged that his lawyer
had discussed with him "all the legal rights that
[I] have and the possible penalties that might be

imposed." The court was further informed by the plaintiff's counsel that the plea to the charge of sexual assault in the first degree was being entered under the *Alford* doctrine; *North Carolina* v. *Alford*, 400 U.S. 25; because of the great risk of conviction.

In exchange for the pleas of nolo contendere, the state agreed not to proceed on the persistent dangerous felony offender charge and also agreed to have any new sentence run concurrently with any outstanding parole time. There was no agreed sentence recommendation. The state did indicate, however, that it reserved the right to ask for imposition of the maximum time on each count to run consecutively for an effective sentence of not less than twenty-two and one-half years nor more than forty-five years. The plaintiff acknowledged that he understood these representations concerning the plea bargain. As noted earlier, the plaintiff was later sentenced, on the state's recommendation, to the maximum allowable sentence.

The acceptance of a plea of guilty or nolo contendere is now a formalistic proceeding mandated to ensure that such a plea has a factual basis and is knowingly, intelligently and voluntarily entered with full understanding of the crime charged, its possible penalties and the consequences of such a plea, and after adequate advice and assistance of counsel. These serial requirements for the acceptance of a plea of guilty or nolo contendere are set forth in Practice Book, 1978, §§ 711–713. Although the court made no finding of a factual basis for the plaintiff's pleas, the recital of facts by the state's attorney to the court was detailed and exhaustive. This the court apparently accepted as sufficient for the pleas without specifically saying so.

In assessing further the court's acceptance of the plaintiff's pleas, the following inquiries must be made: (1) was there a valid waiver of the several

constitutional rights enumerated in Practice Book, 1978, § 711 (5), and (2) did the plaintiff possess an understanding of the law (including all the elements of the offense) in relation to the facts. *Blue* v. *Robinson,* 173 Conn. 360, 379 (Speziale, J., concurring and dissenting opinion).

The record of the change of plea proceedings does not show a valid waiver by the plaintiff of several constitutional rights. There are only three separate references to his rights by the court in the record: (1) "And have you discussed with your lawyer . . . all the legal rights that you have . . . ?"; (2) "And by pleading nolo contendere, which results in a finding of guilty, you are waiving your right to a jury trial and a right to assist [sic] counsel at the trial; you understand that?" and (3) "You could have a trial if you so desired, but, you are doing this voluntarily of your own free will, is that correct?" To each of these questions the plaintiff answered affirmatively. No elaboration or specification of the constitutional rights waived by his pleas of nolo contendere was made in the court's dialogue. The record is silent as to any judicial inquiry and determination that the plaintiff then understood that at a trial he would additionally have "the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself." Practice Book, 1978, § 711 (5).

These are significant omissions that the record fails to establish affirmatively. We cannot " 'presume a waiver of these [two] important federal rights [the privilege against self-incrimination, . . . and the right of confrontation] from a silent record.' *Boykin* v. *Alabama,* 395 U.S. 238, 243." *Blue* v. *Robinson,* supra, 380 (Speziale, J., concurring and dissenting opinion). The mandate of *Boykin* has not been met here. The mandate of Practice Book, 1978, § 711 (5) similarly has not been met here.

In *Blue* v. *Robinson,* supra, 372, it was agreed in the majority opinion "that the presiding judge did not explain to the defendant that he had certain constitutional rights which he would waive by a plea of guilty: the right to a trial by jury, the privilege against compulsory self-incrimination, and the right to confront his accusers . . . ." Nevertheless, the majority still held that *Boykin* did not apply to that particular case, stating (pp. 374–75): "Before the adoption of the new rules in 1976 [now Practice Book, 1978, §§ 711–713]—two and a half years after the acceptance of the defendant's plea in the present case—there was no requirement that the court itself address the defendant in order to be sure to have a record as well as to assure itself that the defendant understood, inter alia, the various constitutional rights which are waived by a plea of guilty and that the plea was intelligent and voluntary. The defendant's reliance on the decisions in the *Boykin* case and on the later case of *Henderson* v. *Morgan,* 426 U.S. 637, . . . as requiring at the time he was sentenced a judicial inquiry by a ritualistic litany is misplaced."

The court's limitation of *Blue* v. *Robinson,* supra, to its time period was subsequently reaffirmed in *State* v. *Williams,* 173 Conn. 545, 554–55, in this comment: "It is to be noted that as in *Blue* the guilty plea in the present case was entered and accepted prior to the adoption in 1976 of §§ 2122–2124 [now §§ 711–713] of the Practice Book which now require that the judicial authority not accept a plea of guilty without first personally addressing the defendant and determining that he fully understands the constitutional rights which are waived by a plea of guilty and that there is a factual basis for the plea."

The new procedural requirements for the acceptance of pleas of guilty and nolo contendere must

now be met. "The state must prove 'an intentional relinquishment or abandonment of a known right or privilege'. . . . The record of a guilty plea must *affirmatively* reflect this valid waiver of constitutional rights, according to *Boykin.*" *Blue* v. *Robinson,* *s*upra, 380 (Speziale, J., concurring and dissenting opinion).

The provisions of Practice Book, 1978, § 711 were modeled after the requirements previously established for the federal district courts by rule 11(c) of the Federal Rules of Criminal Procedure, effective December 1, 1975. The particular requirement of § 711 (5) that our courts not accept a plea of guilty or nolo contendere without first addressing the defendant personally and determining that he fully understands the constitutional rights he is waiving by such plea is similar to the condition imposed upon the federal district judges by federal rule 11(c)(3).

In *United States* v. *Journet,* 544 F.2d 633 (2d Cir.), the United States Court of Appeals for the second circuit considered the new requirements imposed upon the federal district courts by rule 11 (c). The district judge in *Journet* failed to inform the defendant before accepting his guilty plea of several of the matters and rights enumerated in the new rule, including "the right not to be compelled to incriminate himself," specified in rule 11 (c) (3). After being sentenced, the defendant appealed, claiming that his guilty plea was invalid because, while the court advised him of most of the constitutional rights referred to in rule 11 (c), it failed to inform him explicitly of certain other constitutional rights and other matters enumerated in that rule. The government, relying upon the court's recent decision in *Kloner* v. *United States,* 535 F.2d 730 (2d Cir.), claimed (p. 635) that "when viewed

substantively and in the light of all the surrounding circumstances the record reveals that the guilty plea was a voluntary and knowing one, and that since the court's failure to comply with some of the detailed requirements of Rule 11 did not deprive the defendant of any substantial rights, the guilty plea should stand."

The court began its discussion of the issue in *Journet* by distinguishing (p. 635) its earlier decision in *Kloner* v. *United States,* supra, where it had held that the language of the old rule 11, "which was general in nature, did not necessarily require the court to enumerate each and every right waived by the pleader as long as the record, viewed in the totality of the surrounding circumstances, demonstrated that the defendant was 'sufficiently aware of the consequences of and alternatives to his guilty plea to render his plea a voluntary and intelligent one.'" The court then went on to say that Congress, by its recent amendment of rule 11, had mandated a set of instructions outlining the specific rights to be waived in each case as a means of ensuring compliance with the rule, noting (p. 635): "Subsection (c) of the new Rule 11 provides that before accepting a guilty plea the court 'must' personally inform the defendant in open court of specifically enumerated rights and other matters pertaining to the question of whether the plea is a voluntary and knowing one. It is difficult to conceive of clearer language. . . . Congress' purpose was to codify the advice required to be given by *Boykin* v. *Alabama* . . . ."

The conclusion of the court is succinctly and authoritatively stated (p. 636): "We now hold that, as a minimum, before accepting a guilty plea each district judge must personally inform the defendant of each and every right and other matter set out in

Rule 11. Otherwise the plea must be treated as a nullity." The guilty plea, therefore, was directed to be vacated.

In this jurisdiction, *Kloner* v. *United States,* supra, has its parallel ruling in *Blue* v. *Robinson,* supra. Each of those cases was decided prior to the adoption in its respective jurisdiction of a rule codifying the advice required to be given by *Boykin* v. *Alabama,* 395 U.S. 238. Rule 11 (c) of the Federal Rules of Criminal Procedure and its local counterpart, Practice Book, 1978, § 711, both now set forth the "Advice to Defendant" required before the court's acceptance of a plea of guilty or nolo contendere.[2] The decision of the United States Court of Appeals for the second circuit in *United States* v. *Journet,* 544 F.2d 633 (2d Cir.), therefore, points the way in the present case.

Although in bringing this petition for a writ of habeas corpus the plaintiff may have been more disenchanted by the heavy sentence imposed upon him than by the court's failure to comply with § 711, the governing principle is the rule's purpose of ensuring specific and complete compliance with the man-

---

[2] The court notes one textual difference between the federal and state rules prescribing the requisite "Advice to Defendant" before a court may accept a plea of guilty or nolo contendere. Practice Book, 1978, § 711 states: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he fully understands [the constitutional rights and other matters enumerated]." Rule 11 (c) provides: "Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court *and inform him of,* and determine that he understands [the constitutional rights and other matters enumerated]." (Emphasis added.) The additional affirmative burden of the federal rule that the district judge personally inform the defendant of the specified constitutional rights and other matters is a difference without significance. Under Connecticut procedure the defendant cannot be found to understand the constitutional rights and other matters enumerated in § 711 without first being informed of them specifically by the judge or counsel or from prior knowledge, the source of such information being immaterial to their understanding, but necessarily shown on the record.

date of *Boykin.* See *United States* v. *Journet,* supra,
636. If this principle is applied, the plaintiff's
pleas must be ordered vacated because of the court's
failure to comply with § 711 (5) of the 1978 Practice
Book by personally addressing him and determining
that he fully understood that by pleading nolo con-
tendere he was relinquishing certain fundamental
constitutional rights, namely, the right to confront
and to cross-examine witnesses against him, and the
right not to be compelled to incriminate himself.
The record here fails to show a knowing and valid
waiver of those important rights as a consequence
of the plaintiff's pleas. There is an insufficient
factual basis in the record to support a waiver of
the constitutional rights enumerated in § 711 (5).
His pleas of nolo contendere, therefore, were not
intelligently and voluntarily made as required by
*Boykin* v. *Alabama,* supra, and Practice Book, 1978,
§ 712.

The plaintiff further claims that his pleas of nolo
contendere were invalid because the court failed to
establish that he had an understanding of the ele-
ments of the charges against him and that he under-
stood that his conduct fell within the specifications
of those charges.

Practice Book, 1978, § 711 (1), provides that the
judicial authority shall not accept a plea of guilty
or nolo contendere without first addressing the
defendant personally and determining that he fully
understands "[t]he nature of the charge to which
the plea is offered." This requirement for the
acceptance of disposing pleas is separate and dis-
tinct from the ascertainment of a valid waiver of
the enumerated constitutional rights. The record
of the change of plea proceedings fails to show any
discussion by the court of the specific charges
pressed against the plaintiff and their essential
elements.

Although, unlike federal rule 11 (c), Practice Book, 1978, § 711 (1) does not require the judge actually to inform the defendant of the elements of the crime with which he is charged, some showing must appear in the record to disclose that the court has determined that the defendant does possess the requisite understanding of the law. Because the record in this case is barren of any such showing, the necessary conclusion of the court that the plaintiff understood the charges to which he had entered pleas was not, and could not have been, made. " '[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.' *McCarthy* v. *United States,* 394 U.S. 459, 466 . . . . Unless the defendant has had real notice of the nature of the charge against him, the plea cannot constitute an intelligent admission. *Henderson* v. *Morgan,* 426 U.S. 637, 645 . . . . '[I]f a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void.' *State* v. *Battle* . . . [170 Conn. 469] 473." *State* v. *Marra,* 174 Conn. 338, 340.

For a valid plea of guilty or nolo contendere the record must disclose that the defendant fully understands all of the elements of the crime with which he is charged and that what he did falls within those elements. This might best be accomplished by following the federal practice of having the court inform the defendant personally of the law applicable to the situation, but this method of informing the defendant of the nature of his charge is not required in Connecticut courts so long as the court personally ascertains that the defendant fully understands the elements of the law involved. A

reading of the offense by the clerk for plea response is, however, insufficient to explain the nature of the charge to the defendant.

The colloquy between the plaintiff and the court after the entry of his pleas of nolo contendere fails to show that the nature of the charges was fully understood by the plaintiff. The mandatory requirement of Practice Book, 1978, § 711 (1), like that of § 711 (5), therefore, was not met in this case.

Accordingly, it is hereby ordered that the plaintiff be discharged from custody arising from the sentence imposed unless within forty-five days from the filing of this decision the Superior Court vacates the sentence imposed on the plaintiff and allows him to withdraw his pleas of nolo contendere and plead over.